# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FOGE, McKEEVER LLC; TODD M. ROONEY; and ELDON S. THOMPSON, | No.: | 20-1462 |
| Plaintiffs, | | |
| v. | | |
| ZOETIS INC., | | |
| Defendant. | | |

## COMPLAINT

Plaintiffs Foge, McKeever LLC, Todd M. Rooney and Eldon S. Thompson, by their undersigned counsel, file this Complaint against Defendant Zoetis Inc.

## PARTIES

1. Plaintiff Foge, McKeever LLC ("FML") is a Pennsylvania limited liability company with its registered address located at 100 Adios Drive, Apartment 214, Washington, Pennsylvania 15301. The members of FML are adult individuals who are citizens of the States of Illinois and New York.

2. Plaintiff Todd M. Rooney ("Rooney") is an adult individual and citizen of the Commonwealth of Pennsylvania.

3. Plaintiff Eldon S. Thompson ("Thompson") is an adult individual and citizen of the State of Vermont.

4. Defendant Zoetis Inc. ("Zoetis") is a Delaware corporation with its principal place of business located at 10 Sylvan Way, Parsippany, New Jersey 07054.

5. Zoetis is the largest global animal health company, that develops, manufactures and markets veterinary vaccines and medicines. Among others, Zoetis develops, manufactures, and extensively markets an injectable, extended release antibiotic for equines known as EXCEDE.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over the claims in this action arising under state law pursuant to 28 U.S.C. § 1332 because the citizenship of the Plaintiffs is completely diverse from Zoetis, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. The Court has personal jurisdiction over Zoetis pursuant to the principles of due process and the Pennsylvania long-arm statute, 42 Pa. C.S.A. § 5301, *et seq.*, because of its transaction of business within Pennsylvania both specifically in relation to the facts giving rise to this action and during the general course of its business affairs.

8. A substantial part of the events giving rise to Plaintiffs' claims occurred within the judicial district of the United States District Court for the Western District of Pennsylvania. Accordingly, venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

9. FML, Rooney and Thompson (the "Owners") owned a 3-year old Standardbred filly known as Saratoga Gia ("SG"), at all relevant times stabled at the Meadows Racetrack located in Washington County, Pennsylvania.

10. On or about April 7, 2020, via an equine veterinarian, SG received an injection of EXCEDE (ceftiofur crystalline free acid) manufactured and distributed by Zoetis to address a minor puncture wound.

11. On or about April 11, 2020, per Zoetis' specific recommendations, SG was administered a second dosage of EXCEDE via an equine veterinarian.

12. Almost immediately after the second administration of EXCEDE, SG experienced a severe reaction to the drug, causing her to collapse to the floor of the stall and never get up.

13. Due to the extreme distress caused by the administration of EXCEDE, SG was provided with continuous veterinary care up to including her transport on April 13, 2020, to the Galbreath Equine Center, of the Ohio State University ("OSU"), in Columbus, Ohio, for additional emergency treatment.

14. Despite the emergency treatment, on April 15, 2020, SG passed away while under the care of OSU; SG died as a result of the administration of EXCEDE, as directed by Zoetis.

15. Prior to the EXCEDE injections, SG was a promising and successful racehorse.

16. The Owners notified Zoetis of SG's death due to the EXCEDE injections.

17. Upon information and belief, Zoetis is acutely aware of similar adverse and fatal reactions to the injection of EXCEDE in horses, but consciously, intentionally, and maliciously ignored the risks associated with injections of the drug.

18. Upon information and belief, numerous other similar adverse reactions, including those with fatal outcomes, have occurred throughout the United States and elsewhere, and have been reported to Zoetis since at least 2012 and continuing through 2020.

19. Upon information and belief, from 2012 through at least 2020, nearly 600 adverse reaction reports were made by Zoetis to the Federal Drug Administration ("FDA") for EXCEDE reactions experienced by horses in the United States.

20. Zoetis was fully aware that adverse reactions to the administration of EXCEDE have included fatal reactions, internal hemorrhaging, anaphylaxis, and other systemic-type reactions.

21. In many of these instances, the affected horses were provided with extensive and expensive veterinary care and treatment, and the owners of the animals have absorbed veterinary costs as well as the diminished or ruined value associated with the horses who have died. In the case of SG, veterinary bills, other expenses and lost income (including, without limitation, lost breeding income) exceed $1.8 million dollars.

22. Upon information and belief, many of the horses who have suffered adverse reactions to the administration of EXCEDE are performance animals.

23. Zoetis was aware of the adverse reactions to EXCEDE, and the resulting veterinary costs and diminished or eliminated value of the afflicted horses.

24. Despite its knowledge of the severely debilitating and/or fatal reactions to the administration of EXCEDE, Zoetis has not disclosed or adequately warned of EXCEDE's danger to horses and has refused to revise its warning label and prescribing information to reflect the significant negative effects of EXCEDE. As a result, consumers, including the Owners, are left with no way of knowing of the considerable risks and dangers associated with the administration of EXCEDE.

25. EXCEDE is an antibiotic expressly marketed as treating equine infections with a "two dose, one solution" treatment for ill horses. Zoetis further markets EXECEDE as doing in two doses what would otherwise take ten. EXECEDE is also prescribed by veterinarians for off-label uses.

26. EXCEDE allegedly works through an extended release formulation, which, upon gaining FDA approval in 2010, Zoetis touted as a "true innovation." Because of EXCEDE's extended release formulation, Zoetis claimed that its treatment of horses was easier and more effective because it would allow owners and veterinariains to administer treatment with less stress to the animal.

27. EXCEDE is extensively promoted and marketed for use with stabled animals, such as SG.

28. For performance horses such as SG, administration of a 10-day course of non-extended release antibiotics should be a relatively easy task that has been accomplished in the horse industry for many decades.

29. Despite a viable alternative, and the known concerns regarding the negative post-approval experiences suffered by, at least, hundreds of horses, Zoetis has willfully and intentionally refused to make any alterations to EXCEDE's label and continues to extensively market the product as being superior to traditional courses of antibiotic treatment for injured horses.

## COUNT I
## NEGLIGENCE

30. The averments of paragraphs 1 through 29 are incorporated by reference as if fully set forth herein.

31. At all relevant times, Zoetis was engaged in the business of designing, developing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the injectable animal antibiotic with the brand name EXCEDE, which was injected into SG as directed by Zoetis.

32. Zoetis has a duty to exercise reasonable care in the design, development, manufacture, sale, distribution, and marketing of EXCEDE into the stream of commerce, including a duty to assure that its products, specifically EXCEDE, do not pose a significantly increased risk of harm and adverse events to the animals on which its products are used.

33. Zoetis failed to exercise ordinary care in the design, development, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, distribution, promotion, and marketing of EXCEDE into interstate commerce in that Zoetis knew or should have known that EXCEDE would cause debilitating and/or fatal reactions in horses, such as those experienced by SG.

34. Despite the fact that Zoetis knew or should have known that EXCEDE poses a serious fatal risk of harm to horses, Zoetis continues to manufacture and market EXCEDE for use by consumers and end-users, including the Owners.

35. The EXCEDE antibiotic is unreasonably dangerous for its ordinary and foreseeable use in horses, and the unreasonably dangerous condition existed when the EXCEDE antibiotic left Zoetis' hands.

36. The EXCEDE antibiotic extended release formulation is unreasonably dangerous because it is defective in manufacture, defectively designed, and/or not accompanied by adequate warnings about its hazardous properties.

37. As a direct and proximate result of Zoetis' negligence, SG died. The Owners sustained veterinary expenses for the treatment of SG in an attempt to save her life, and sustained additional damages in that they no longer have monetary value in SG as a performance and breeding horse.

## COUNT II
## STRICT LIABILIATY/FAILURE TO WARN

38. The averments of paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

39. At all relevant times, Zoetis was engaged in the business of designing, developing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the injectable animal antibiotic with the brand name EXCEDE, which was injected into SG as directed by Zoetis.

40. At all relevant times, Zoetis was fully aware of the risks and dangers posed by EXCEDE, including, without limitation, that EXCEDE causes debilitating and/or fatal reactions in horses, such as those experienced by SG.

41. At all relevant times, the Owners and their veterinarians were not aware of the risks and dangers associated with the administration of EXCEDE to stabled horses.

42. Zoetis' warning label and treatment indications for EXCEDE do not indicate the aforementioned risks and dangers.

43. As a direct and proximate cause of Zoetis' failure to provide an informative, accurate, and adequate warning label, SG died. The Owners sustained veterinary expenses for the treatment of SG in an attempt to save her life, and sustained additional damages in that they no longer have monetary value in SG as a performance and breeding horse.

## COUNT III
## STRICT LIABILITY/DEFECTIVE DESIGN AND MANUFACTURE

44. The averments of paragraphs 1 through 43 are incorporated by reference as if fully set forth herein.

45. At all relevant times, Zoetis was engaged in the business of designing, developing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the injectable animal antibiotic with the brand name EXCEDE, which was injected into SG as directed by Zoetis.

46. The EXCEDE antibiotic is unreasonably dangerous for its ordinary and foreseeable use in horses, and the unreasonably dangerous condition existed when the EXCEDE antibiotic left Zoetis' hands.

47. The EXCEDE antibiotic is unreasonably dangerous because it is defective in manufacture, defectively designed, and/or not accompanied by adequate warnings about its hazardous properties.

48. Despite the fact that Zoetis knew or should have known that EXCEDE poses a serious risk of harm to horses, it continues to manufacture and aggressively market EXCEDE for use by consumers and end-users, including the Owners.

49. As a direct and proximate cause of Zoetis' defective design and manufacture of EXCEDE, SG died. The Owners sustained veterinary expenses for the treatment of SG in an attempt to save her life, and sustained additional damages in that they no longer have monetary value in SG as a performance and breeding horse.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

50. The averments of paragraphs 1 through 49 are incorporated by reference as if fully set forth herein.

51. Zoetis expressly warranted that the EXCEDE antibiotic was safe and reasonably fit for its intended use in the treatment of horses through its information containing affirmations of fact, promises, and descriptions regarding EXCEDE.

8

52. Zoetis advertised, marketed and sold EXCEDE into interstate commerce with the intent that its statements and representations would be relied upon by consumers and other end users. These affirmations of fact and promises became part of the basis of the bargain with consumers and other end users who purchased and/or used EXCEDE.

53. The Owners and SG's treating veterinarians justifiably relied upon Zoetis' statements and representations concerning EXCEDE.

54. The Owners and SG's treating veterinarians chose the EXCEDE antibiotic based upon Zoetis' express warranties and representations regarding the safety and fitness of EXCEDE.

55. Zoetis breached its express warranties to the Owners because the EXCEDE antibiotic manufactured, marketed and sold by Zoetis does not conform to its statements and representations because an injection of EXCEDE causes serious harm to horses, including death, even when used as recommended and directed by Zoetis.

56. As a direct and proximate cause of Zoetis' breach of express warranty, SG died. The Owners sustained veterinary expenses for the treatment of SG in an attempt to save her life, and sustained additional damages in that they no longer have monetary value in SG as a performance and breeding horse.

## COUNT V
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

57. The averments of paragraphs 1 through 56 are incorporated by reference as if fully set forth herein.

58. Zoetis' EXCEDE is a good, and Zoetis, as the manufacturer, marketer, distributor and seller of EXCEDE, is a merchant within the meaning of the Pennsylvania Uniform Commercial Code.

59. At all relevant times. Zoetis designed, developed, manufactured, marketed, distributed, and sold the EXCEDE antibiotic to or for its eventual sale to consumers and other end users, including, without limitation, the Owners. Zoetis knew of the use for which EXCEDE was intended, and impliedly warranted that it was of merchantable quality and reasonably safe for the purposes for which such product is used, and that EXCEDE was acceptable in trade for the product descriptions.

60. The Owners and other end users justifiably relied on Zoetis' skill and judgment in selecting, purchasing and/or using EXCEDE, and justifiably relied on Zoetis' implied warranties concerning EXCEDE.

61. To be merchantable, EXCEDE must, among other things:

   a. be of fair average quality within the description;

   b. be fit for the ordinary purpose for which such good is used; and

   c. conform to the promises and affirmations of fact made on the container or label if any. 13 Pa. C.S. § 2314(b).

62. EXCEDE is, in fact, unfit, unmerchantable and unreasonably dangerous for its foreseeable and intended use(s) and is defective in manufacture, defectively designed, not accompanied by adequate warnings concerning its hazardous properties, and is not in compliance with requirements relating to the establishment of implied warranties of merchantability.

63. Zoetis breached its duties by selling to the Owners and other end users' a good that is not of merchantable quality.

64. As a direct and proximate cause of Zoetis' breach of implied warranty, SG died. The Owners sustained veterinary expenses for the treatment of SG in an attempt to save her life,

and sustained additional damages in that they no longer have monetary value in SG as a performance and breeding horse.

## COUNT VI
## FRAUDULENT MISREPRESENTATION/CONCEALMENT

65. The averments of paragraphs 1 through 64 are incorporated by reference as if fully set forth herein.

66. As averred herein, Zoetis misrepresented material facts relating to the nature and quality of EXCEDE.

67. Zoetis made such false, misleading and deceptive statements with the intention of inducing the Owners and other end users to purchase and/or use EXCEDE.

68. As averred herein, despite its knowledge of the severely debilitating and/or fatal reactions to the administration of EXCEDE, Zoetis actively concealed the known risks and dangers of EXCEDE to horses and refused to revise its warning label and prescribing information to reflect the significant negative effects of EXCEDE.

69. Zoetis' intentional representations and concealment of the risks and dangers of EXCEDE were material to the transactions consummated by the Owners and other end users, namely their purchase and/or use of EXCEDE.

70. Zoetis knew that its representations were false, and that it was concealing the risks and dangers that EXCEDE posed to horses.

71. Zoetis deliberately intended to mislead the Owners and other end users into relying upon its active misrepresentations.

72. Zoetis' misrepresentations and concealment were done with the intent of inducing, and did in fact induce, the Owners and other end users to purchase and/or use EXCEDE.

73. The Owners and other end users were unaware of the falsity of Zoetis' statements and representations, and justifiably relied upon them in deciding to purchase and/or use EXCEDE.

74. Zoetis acted with malice and reckless indifference to the rights of the Owners.

75. As a direct and proximate cause of Zoetis' tortious conduct, SG died. The Owners sustained veterinary expenses for the treatment of SG in an attempt to save her life, and sustained additional damages in that they no longer have monetary value in SG as a performance and breeding horse.

## COUNT VII
## NEGLIGENT MISREPRESENTATION (IN THE ALTERNATIVE)

76. The averments of paragraphs 1 through 75 are incorporated by reference as if fully set forth herein.

77. Independent of any contractual relationship between the parties, Zoetis had a duty to fairly and accurately represent EXCEDE on its website, advertising and marketing materials, label, and elsewhere.

78. As averred herein, Zoetis negligently represented material facts relating to the nature and quality of EXCEDE.

79. Zoetis made such false, misleading and deceptive statements with the intention of inducing the Owners and other end users to purchase and/or use EXCEDE.

80. Zoetis was careless in publishing such statements and representations without ascertaining the truth thereof.

81. The Owners and other end users were unaware of the falsity of Zoetis' statements and representations, and justifiably relied upon them in deciding to purchase and/or use EXCEDE.

82. As a direct and proximate cause of Zoetis' tortious conduct, SG died. The Owners sustained veterinary expenses for the treatment of SG in an attempt to save her life, and sustained

additional damages in that they no longer have monetary value in SG as a performance and breeding horse.

## **PRAYER FOR RELIEF**

WHEREFORE, the Owners respectfully request that that Court enter an Order:

a. Entering judgment in favor of the Owners and against Zoetis based upon the unlawful conduct averred herein;

b. Awarding the Owners actual, compensatory, incidental and/or consequential damages in excess of $1,800,000.00;

c. Awarding the Owners punitive damages in an amount to be determined at trial;

d. Awarding the Owners pre-judgment and post-judgment interest on all amounts awarded, and costs; and

e. Granting the Owners all such other legal and equitable relief that the Court deems necessary and proper.

## **JURY TRIAL DEMAND**

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs demand a trial by jury on all claims so triable.

                         GALANTER TOMOSOVICH, LLC

                         By:   */s/ Ryan James*
                                 Ryan James
                                 Pa. I.D. #82799

                                 Frick Building – Suite 1000
                                 437 Grant Street
                                 Pittsburgh, PA 15219
                                 (412) 802-2690

                                 *Attorneys for Plaintiffs*